Craig M. Palik, Esquire (VSB #45728)
James M. Greenan (Admitted Pro Hac Vice)
McNamee Hosea, et al
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
(301) 441-2420
cpalik@mhlawyers.com
jgreenan@mhlawyers.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| **In re:** | : | |
| | : | |
| **AIROCARE, INC.,** | : | Case No. **10-14519-RGM** |
| | : | (**Ch**apter 11) |
| **Debtor.** | : | |

**OBJECTION OF JACK PROUTY, STUART RUTCHIK
AND TERRANCE WOODBRIDGE TO APPROVAL OF
DEBTOR'S PROPOSED DISCLOSURE STATEMENT**

COMES NOW Jack Prouty ("Prouty"), Stuart Rutchik ("Rutchik") and Terrance Woodbridge ("Woodbridge")[1], by and through their attorneys Craig M. Palik, James M. Greenan and McNamee Hosea Jernigan Kim Greenan & Lynch, P.A., and hereby objects to the approval of Debtor's proposed Disclosure Statement, pursuant to § 1125 of Title 11, United States Code (the "Code"), and Rules 3017 and 9014 of the Federal Rules of Bankruptcy Procedure ("F.R.B.P"), and in support of said objection states as follows:

**I.    GENERAL**

According to 11 U.S.C. § 1125, a Disclosure Statement must contain "adequate information" before a court can approve the Disclosure Statement.  The Bankruptcy Code defines "adequate

---

[1] Prouty and Rutchik are shareholders of record of the Debtor as of the petition date and hold unsecured claims against the Debtor.  Woodbridge is a former shareholder of the Debtor and holds an unsecured claim against the Debtor.  Prouty, Rutchik and Woodbridge are additionally defendants in an Adversary Proceeding commenced by

1

information" as information containing sufficient detail "that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan ..." 11 U.S.C. § 1125(a)(1).

The proposed Joint Disclosure Statement (the "Disclosure Statement") of AirOcare, Inc., Debtor (the "Debtor") fails to provide adequate information to enable a creditor of the Debtors to make an informed decision before exercising its right to vote on the Debtors' Plan of Reorganization [the "Plan"]. In addition, the information that is provided in the proposed Disclosure Statement is in many instances incomplete, conclusory and/or ambiguous.

## II. OBJECTIONS

### A. Debtor has failed to provide adequate information regarding the extent of its assets.

Debtor's Disclosure Statement includes a discussion of the company's assets which indicates "the principal [business] assets of AirOcare's are its rights in the Patent and the Hussmann License Agreement" See Disclosure Statement at p. 9. Such statement implies that there are other business assets of the Debtor. Nowhere is there a discussion of what other assets are held by the Debtor, or what import these assets are relative to the Debtor's reorganization efforts, if any. Debtor should be required to disclose the other assets it believes it possesses, primary, secondary or otherwise, in order to provide creditors with a complete picture of its financial condition and prospects for reorganization. See In re Scioto Valley Mortgage Co., 88 B.R. 168, 170 (Bankr. S.D. Oh. 1988) (indicating categories of information that should be included in a disclosure statement). If there are no other "business" assets of the Debtor, or they are deemed insignificant for purposes of the Debtor's Plan, such information should similarly be

---

the Debtor styled AirOcare v. McDonald et al., Adv. No. 10-01481 RGM.

provided to creditors.

The Disclosure Statement further identifies avoidance litigation against former insiders of the Debtor in the Adversary Proceeding styled AirOcare v. McDonald et al., Adv. No. 10-01481 RGM as the only other category of assets possessed by AirOcare. In the discussion therein, the statement "[o]ther than these claims, AirOcare is unaware of any other claims or transfers which may be recovered or avoided as preferential or fraudulent transfers." Disclosure Statement at p. 10. The discussion, however, fails to indicate why the Debtor believes the transfer of $137,492.10 on May 28, 2010, the day before the filing of this case, used to "repay bridge loans which had been advanced to AirOcare by certain insiders" is not considered an avoidable transfer worthy of pursuit. Id. There is no discussion of the terms and aging of such bridge loans to insiders, whether such transfers are believed to be in the ordinary course of business, or any other legal basis provided for why this is not an avoidable preference. Such information is needed to give creditors the ability to make a fully informed decision before exercising their right to vote on the Debtors' Plan.

**B. Debtor has failed to provide a breakdown of its anticipated Chapter 11 administrative claims and does not explain how such administrative claims will be paid on the Effective Date.**

The Debtor's Disclosure Statement estimates that "$550,000 in Allowed Administrative Expense Claims will be payable as of the Effective Date." Id. Creditors should be informed of how the Debtor arrived at this figure, the breakdown of such claims by each claimant and how the Debtor intends to fund this large payment on the Effective Date of the Plan.

**C. Debtor has provided utterly no explanation for how it intends to operate its business in order to generate sufficient revenues to pay its creditors in full with Legal Interest.**

The Debtor makes the statement "The Plan contemplates that creditors will be paid in full, with Legal Interest through revenues generated by AirOcare following confirmation of the Plan and possibly the proceeds of litigation." Id. at 11. However, there is absolutely no information whatsoever concerning how the Debtor intends to operate its business or to provide any semblance of a business plan to generate sufficient revenues to do so.

The liquidation analysis attached at Exhibit B to the Plan assumes revenues based solely upon projected royalties from the Hussmann License Agreement through three scenarios: (1) the minimum quarterly royalty payment; (2) the mid-point of the minimum and maximum quarterly royalty payment; and (3) the maximum royalty payment. If the minimum royalty payment is received, the unsecured creditors are projected to receive only a 1% recovery. It is therefore incumbent upon the Debtor to indicate what, if any, plan it has for ensuring that the royalties under the Hussmann License Agreement are maximized and will in fact be greater than the minimum royalty payment. The additional guidance needed from the Debtor in this regard would necessarily include: (1) projections which identify assumptions about the marketing and sales that will generate the revenues; (2) what, if any, efforts are being undertaken to work with Hussmann/Ingersoll Rand regarding the expansion of business and revenues; (3) an assessment of the competitive marketplace; and (4) the resources that the Debtor will be able to devote toward further development and/or improvement of the working relationship with Hussmann/Ingersoll Rand.

In addition, the Debtor advises in the context of the discussion of the Liquidation Analysis that "Hussmann has the right to cancel the Hussmann License at any time." The Debtor should be

required to disclose information regarding the likelihood of such a cancellation. Substantial additional information is needed for creditors to make an informed decision about the Debtor's ability to derive revenues from the Hussmann License Agreement adequate to permit them to make an informed decision regarding whether for purposes of voting on the Plan.

Apart from the revenues derived Hussmann License Agreement, the Debtor, in purely conclusory fashion states,

> AirOcare expects to generate significant future revenue from the development of its technology and the Patent. The exact nature of these future developments and the amount of revenue that they will generate is impossible to predict with accuracy at this time, however. Accordingly, all of the distribution scenarios detailed in the Distribution Analysis include no additional revenues from application of the Patent to fields of use outside of the scope of the Hussmann License Agreement. Id.

Notwithstanding that Debtor does not rely upon any revenue outside of the Hussmann License Agreement, a discussion of the reasons it believes exist regarding generating significant future revenue from the development of its technology and the Patent would be appropriate in giving creditors adequate information to vote on the Plan. What potential opportunities does the Debtor foresee? What means of implementing the exploration and development of the technology and patent exist? Is the development of its technology and the patent to take place in-house? Does the Debtor intend to enter into additional licensing agreements? What individuals does the Debtor have a relationship with that will assist it in expanding the development of its technology and patent. What, if any, generalized business plan is there for developing such "significant future revenue?" Notwithstanding the uncertainty of future opportunities, the Debtor needs to expand upon the reason for asserting that there is an expectation that the company will "generate significant future revenue from the development of its technology and the Patent," particularly in light of the fact that there is

no certainty that revenue from the Hussmann License Agreement will pay creditors in full with Legal Interest.

### III. CONCLUSION

It is manifest that Debtor's Disclosure Statement fails to provide creditors with "adequate information" to enable creditors to make an informed judgment. Because the Debtor's Disclosure Statement fails to provide adequate information regarding the full extent of its assets, a breakdown of the administrative expenses or how they will be will be paid on the Effective Date of the Plan, or an explanation for how the Debtor intends to operate the business going forward that in any way resembles a business plan, the Disclosure Statement cannot be approved. Unless and until these deficiencies are rectified, the Disclosure Statement provides only unsubstantiated generalizations regarding the Debtor's ability to pay creditors under the Plan and unsupported claims of the advantages of Debtors' reorganization over their liquidation. As such, the Joint Disclosure Statement fails to meet the requirements of 11 U.S.C. § 1125(a). Debtor's request for approval of its Joint Disclosure Statement must therefore be denied.

Respectfully submitted,

/s/ Craig M. Palik
Craig M. Palik, Esquire (VSB #45728)
James M. Greenan (Admitted Pro Hac Vice)
McNamee Hosea, et al
6411 Ivy Lane, Suite 200
Greenbelt, Maryland 20770
(301) 441-2420
cpalik@mhlawyers.com

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of January, 2011, a copy of the foregoing Objection of Jack Prouty, Stuart Rutchik and Terrance Woodbridge to Approval of Debtor's Proposed Disclosure Statement, was mailed, by first class mail postage prepaid to the following:

Frank J. Bove
Office of the US Trustee
115 S. Union St., Ste. 210
Alexandria, VA 22314
frank.j.bove@usdoj.gov

Lawrence Allen Katz
Venable LLP
8010 Towers Crescent Drive
Suite 300 Vienna, VA 22182
lakatz@venable.com

Kristen E. Burgers
Venable LLP
8010 Towers Crescent Dr.
Suite 300 Vienna, VA 22182-2707
keburgers@venable.com

Stephen E. Leach
Leach Travell Britt, PC
8270 Greensboro Drive
Suite 1050 McLean, VA 22102
sleach@ltblaw.com

/s/ Craig M. Palik
Craig M. Palik