IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re: ) | Case No. 10-14519-RGM |
| ) | |
| AIROCARE, INC., ) | |
| ) | (Chapter 11) |
| Debtor ) | |
| ) | |

## OBJECTION OF EMF PROPERTIES GROUP, LLC TO DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

EMF Properties Group, LLC ("EMF"), by and through its undersigned counsel, files this objection (the "Objection") to the *Chapter 11 Plan of Reorganization of AirOcare, Inc.* (the "Plan") filed by AirOcare, Inc., as debtor-in-possession in the above-captioned case (the "Debtor"), and asserts as follows:

### Background

1. On May, 29, 2010 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2. On August 13, 2008, the Debtor and EMF entered into two leases of real property for commercial space located in Cary, North Carolina. On August 30, 2010, the Court entered an order granting the Debtor's *Motion for Entry of an Order Authorizing the Debtor to Reject its Unexpired Lease with EMF Properties Group, LLC* Nunc Pro Tunc *to May 29, 2010* [Docket No. 87], authorizing the rejection of the first lease. On September 20, 2010, the Court entered an order granting the Debtor's *Motion for Entry of an Order Authorizing the Debtor to Reject its Unexpired Lease at 134 Towerview Court with EMF Properties Group, LLC* Nunc Pro Tunc *to May 29, 2010* [Docket No. 101], authorizing the rejection of the second lease.

3. On August 9, 2010, EMF filed proof of claim no. 12 (the "Claim"), asserting a general, non-priority, unsecured claim in the amount of $77,365.95, representing all unpaid rent and late fees owed to EMF by the Debtor under the two leases. The Claim is subject to a pending objection filed by the Debtor on February 7, 2011 [Docket No. 179], to which EMF responded substantially contemporaneously herewith.

4. On November 24, 2010, the Debtor filed its Plan providing for, among other things, allegedly full payment of all Allowed Claims[1] and the retention of all Equity Interests held as of the Effective Date. On January 13, 2011, the Debtor filed its *First Amended Disclosure Statement for Chapter 11 Plan of Reorganization of AirOcare, Inc.* (the "First Amended Disclosure Statement") [Docket No. 160]. On January 18, 2011, the Court entered its *Order (I) Approving First Amended Disclosure Statement, (II) Establishing a Deadline for Filing Proofs of Claim By Scheduled, Disputed Creditors, (III) Approving Form of Ballot, (IV) Establishing Voting Deadline and Procedures for Vote Tabulation, and (V) Approving Form of Notice* [Docket No. 165].

## Objection

5. The Debtor's Plan fails to satisfy the requirement for confirmation because (i) it has not been proposed in good faith; (ii) it is not feasible; and (iii) it fails to satisfy section 1129(b)(2)(C)(ii) (the "Absolute Priority Rule"). For these reasons, this Court should deny confirmation.

**A.    The Debtor's Plan Has Not Been Proposed In Good Faith**

6. Under section 1129(a)(3) of the Bankruptcy Code, a plan is unconfirmable unless proposed in good faith. One of the test's for good faith is whether the Debtor has made its best

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

effort to repay creditors with post-petition assets in proposing a plan of reorganization. See Roland v. UNUM Life Ins. Co., 223 B.R. 499, 506 (E.D. Va. 1998) (citing In re Weber, 209 B.R. 793, 798-99 (Bankr. D. Mass. 1997). "Accordingly, the failure of a debtor to use the full reach of its disposable resources to repay creditors is evidence that a plan is not proposed in good faith because such conduct frustrates [the objective of prompt payment of creditors]." Crestar Bank v. Walker (In re Walker), 165 B.R. 994 (E.D. Va. 1994).

7. The Debtor's Plan fails to satisfy the good faith standard in its treatment of Holders of Class 3 Claims. The Debtor's Plan states that the Debtor will pay Holders of Class 3 Claims in full by October 1, 2017, more than six years and a half years from now. Moreover, according to Plan' Distribution Analysis, if the projected royalties from the Hussmann License Agreement reach the midpoint between the minimum and maximum possible distributions over that period of time, there will be more than $9 million in excess cash available to distribute to Holders of Class 3 Claims. See Plan Ex. C. However, if that happens, the Plan does not require the Reorganized Debtor to accelerate distributions to Holders of Class 3 Claims. The Plan requires only that the Reorganized Debtor make distributions in such amounts that the Holders of Class 3 Claims received full payment within six and a half years. See Plan § 5.3 ("Each Allowed Class 3 Claim shall be paid (a) Pro Rata in Available Cash and to the extent of sufficient funds by payment of Quarterly Installments *so that the Allowed amount of such Claim plus Legal Interest shall be paid in full no later than October 1, 2017.*") (emphasis added).

8. The Plan permits the Reorganized Debtor nearly unfettered discretion in the use of cash and other assets from business operations post-confirmation. The only apparent restriction as it relates to Holders of Class 3 Claims is that Holders of Class 4 Claims, equity interests, may not receive distributions until Holders of Class 3 Claims are paid in full.

Consequently, the Plan fails to satisfy the good faith requirement by not requiring that, after payment of Holders of Class 1 Claims, all Available Cash be distributed to Holders of Class 3 Claims.

9. Furthermore, the Plan fails to satisfy the good faith requirement of section 1129(a)(3) by not providing Holders of Class 3 Claims with minimum distributions. Indeed, to the extent that the Reorganized Debtor's business operations produces no Available Cash, the Plan does not entitle Holders of Class 3 Claims to any distributions. In even further departure from the good faith requirement, the Plan lacks a default provision. Consequently, with no default provision and no minimum distribution requirement, Holders of Class 3 Claims would be without a remedy until October 1, 2017, the deadline for payment in full. Until that time, were this Court to confirm the Plan in its current form, Holders of Class 3 Claims would be held hostage by Plan's injunction.

10. Despite this clear lack of protection for Holders of Class 3 Claims, the Plan provides that equity will retain its interest in and control over the Reorganized Debtor. In fact, other than requiring that Holders of Class 3 Claims receive payment in full prior to any distribution to equity, the Plan provides no limitations on the ability to equity to exercise ownership rights or to sell its interests and retain the proceeds. Equity is retaining its full interest in the Reorganized Debtor without contributing new value.

11. Moreover, a plan proposed in good faith is one that "will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." Collier on Bankruptcy ¶ 1129.02[3][a][ii][A] (15th rev. ed.) (quoting In re Madison Hotel Associates, 749 F.2d 410 (7th Cir. 1984)). The Plan's treatment of Holders of Class 3 Claims fails to satisfy the objectives and purposes of the Bankruptcy Code. For example, the length of the payment plan is too long and

the Plan fails to provide for minimum distributions with no default remedy until October 1, 2017. Additionally, a tenet of the Bankruptcy Code is placing the claims of unsecured creditors above those of equity interests. Here, the Plan provides too much value to equity at the expense of unsecured creditors.

B. **The Plan is Not Feasible.**

12. Pursuant to section 1129(a)(11), a plan is feasible only if "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11). For example, "failure to identify a consistent source of income for funding its provisions" renders a plan of reorganization not feasible under section 1129(a)(11). Crestar Bank, 165 B.R. at 998. Section 1129(a)(11) requires the Debtor to show "concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the [P]lan." Collier on Bankruptcy ¶ 1129.02[11] (citing S&P, Inc. v. Pfiefer, 189 B.R. 173, 183 (N.D. Ind. 1995)). "Feasibility obviously becomes more difficult to establish if the plan provides for long-term payments to creditors." Id.

13. In submitting the Plan, the Debtor has essentially placed all of its eggs in one basket. The Plan provides for no initial distribution to Holders of Class 3 Claims. Instead, the entire success of the Plan, under which Holders of Class 3 Claims must be paid in full, rests on cash produced from the future operation of this "start-up business[]." Disclosure Statement § II.B. And under the Plan, all cash from future operations, and ability to pay creditors, depends on a single source, the Hussmann License Agreement. The Disclosure Statement provides that Hussmann has the right to cancel the Hussmann License Agreement at any time. See Disclosure Statement § II.B. However, the Debtor's Distribution Analysis fails to consider the likelihood or impact of a cancellation by Hussmann on the Reorganized Debtor's ability to make distributions under the Plan.

14. Moreover, the Debtor has not provided the Court any concrete information, such as historical payments, regarding royalty payments under the Hussmann License Agreement. For example, if Hussmann has historically paid only the minimum amount under the Hussmann License Agreement, the Plan is patently infeasible, and unconfirmable. This Court should not confirm a plan that wagers the entire prospect for paying creditors on a single, revocable license, for which the Debtor has failed to produce for the Court any evidence of historical or future payments.

15. Other than the Hussmann License Agreement, the Plan offers no concrete sources of Available Cash to distribute to Holders of Class 3 Claims. The Disclosure Statement discloses very recent and ongoing discussions between the Debtor and Prototype Production, Inc., that according to the Debtor, may lead to increased business for the Debtor. See Disclosure Statement § III.H. However, it appears this business relationship is too speculative to be considered a source of repayment for creditors. At a minimum, this Court should defer plan confirmation until such time as the Debtor can provide concrete evidence of additional sources for repayment of creditors.

C. The Plan Fails to Satisfy the Absolute Priority Rule

16. The Absolute Priority Rule, as codified in section 1129(b)(2)(B), provides:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
> (B) With respect to a class of unsecured claims—
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

This requirement is the codification of the common law absolute priority rule. See In re Ribs Auto Sales, Inc., 140 B.R. 390 (Bankr. E.D. Va. 1992).

17. On the surface, it appears that the absolute priority rule is satisfied (equity shall not receive distributions prior to payment in full of Holders of Class 3 Claims), however, this confuses the absolute priority rule as it relates to equity. A cash distribution to equity is not the only source of recovery to equity under the Plan. By merely retaining its equity interest in the Reorganized Debtor on the Effective Date, equity is placing itself ahead of Holders of Class 3 Claims, whose speculative right to payment in full does not accrue until October 1, 2017. Equity, on the other hand, retains ownership interest in the Debtor on the Effective Date.

18. For example, assume that payments under the Hussman License Agreement were insufficient to provide a return to Holders of Class 3 Claims, a scenario likely enough that it was provided for in the Distribution Analysis. Under the Plan, equity retains unrestricted ownership rights in the Reorganized Debtor. See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 208 (providing that the retention of property under a plan includes retention of equity ownership interests, even in an insolvent company). Nothing in the Plan prohibits an equity holder from selling that equity and cashing out well in advance of full payment to Holders of Class 3 Claims. As Holders of Class 3 Claims have no rights to proceeds from the sale of equity, the Plan plainly violates the absolute priority rule. Without contributing new value, equity cannot retain any interest if unsecured creditors are not paid in full. See In re Bryson Properties, XVIII, 961 F.2d 496, 502 (4th Cir. 1992). Therefore, this Court should not confirm that Plan because it fails the Absolute Priority Rule.

**WHEREFORE**, EMF respectfully requests that this Court enter an order (i) denying confirmation of the Plan and (ii) granting such other relief as is just and proper.

Dated: March 1, 2011
      Richmond, Virginia

                                            */s/ Jason W. Harbour*
                                            Jason W. Harbour (VSB No. 68220)
                                            Justin F. Paget (VSB No. 77949)
                                            HUNTON & WILLIAMS LLP
                                            Riverfront Plaza, East Tower
                                            951 East Byrd Street
                                            Richmond, Virginia 23219
                                            Tel. (804) 788-8200
                                            Facsimile. (804)
                                            jharbour@hunton.com
                                            jpaget@hunton.com

                                            *Attorneys for EMF Properties Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of March, 2011, a copy of the foregoing was served electronically via the Court's CM/ECF system to all parties who have filed a request for service of papers.

                                            /s/ Jason W. Harbour
                                            Jason W. Harbour