IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

IN RE:

AIROCARE, INC.,                                          CASE NO. 10-14519-RGM

DEBTOR.                                                  CHAPTER 11

## OBJECTION TO CONFIRMATION

Comes Key Electronics, Inc. ("Key"), and for its objection to the confirmation of the Chapter 11 Plan as filed by the Debtor (the "Plan"), states as follows:

## INTRODUCTION AND FACTUAL BACKGROUND

The Plan should not be confirmed because it does not comply with applicable bankruptcy law and unfairly subordinates Key's claims in favor of the interests of insiders and equity holders of the Debtor. As discussed in Key's Proofs of Claim and the attachments thereto, Key claims a total of $393,751.17 arising from pre-petition litigation commenced against the Debtor. (*See* Claims 19, 20.) Due to the Debtor's filing of this bankruptcy case, this litigation has been stayed and Key's claims have not yet been reduced to judgment. The Debtor disputes Key's claims and has objected to them in their entirety.

Pursuant to the Plan, the Debtor's creditors are classified into four classes, which are to be paid off in descending order. Class 1 claims consist of allowed secured claims; however, the only secured claim against the Debtor is held by ARC, LLC ("ARC"). (DE 160, at 8, 15-16.) ARC is a limited liability company that is primarily owned by directors of the Debtor (50%) and non-director shareholders of the Debtor (30%). (*Id.*, at 8.) ARC was a DIP lender for the Debtor during this bankruptcy. On August 27, 2010, the Court entered an Order approving the DIP loan from ARC to the Debtor. (DE 86.) Pursuant to the Court's Order, ARC was granted a first

priority lien and security interest in all of the Debtor's assets that would secure "all amounts *advanced* under the DIP facility post-petition." (DE 86, at 3, 5 (emphasis added).) Under the terms of the Plan, ARC (as a Class 1 creditor) is to be paid in full before Class 3 claimants (including Key) or Class 4 equity holders will receive any distribution under the Plan. (*Id.*, at 16.) Thus, pursuant to the express terms of the Plan, the Debtor's insiders will see their "loan" repaid before any general unsecured creditors such as Key receive any payment and before such insiders would otherwise receive any residual assets of the Debtor as Class 4 equity interest holders. Moreover, according to the Debtor's First Amended Disclosure Statement (the "Disclosure Statement"), the Debtor borrowed $700,000 post-petition under the DIP arrangement. (DE 160, at 8-9.) In the same Disclosure Statement, however, the Debtor asserts that ARC possesses a Class 1 claim of $3,000,000. (DE 160, at 13-14.)

Additionally, the Plan also treats as Class 3 creditors a Dr. Erik Young ("Young"), who is a former director of the Debtor, and various other claimants related to Young (the "Young Plaintiffs"). (DE 160, at 4-5.) Young commenced a civil action against the Debtor in February of 2010, asserting that he was misled into investing in the Debtor. (*Id.*) During the course of this bankruptcy, the Young Plaintiffs and the Debtor entered into a settlement, pursuant to which the parties agreed that the Young Plaintiffs would hold a single, general unsecured claim of $1,530,000 and Young individually would receive a general unsecured claim of $17,500. However, the settlement also permitted the Young Plaintiffs to retain their equity interests in the Debtor under any plan proposed by the Debtor. Thus, once again, the Plan proposes to favor the Debtor's equity holders at the expense of general unsecured creditors like Key.

## ARGUMENT

**I.     The Plan Should Be Rejected Because It Favors the Debtor's Insiders at the Expense of Its Unsecured Creditors.**

Pursuant to 11 U.S.C. § 1129(b), a chapter 11 plan cannot be confirmed unless it is "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Key submits that the Plan is not "fair and equitable" as to the interests of it and other general unsecured creditors because the Plan promotes the interests of the Debtor's directors and shareholders over the interests of the general unsecured creditors.

**A.     The ARC Claim Should Not Be Accorded Class 1 Priority, and Even If It Were, Is Not Worth $3,000,000.**

The Plan is not confirmable primarily because it assigns first priority to the DIP loan funded by ARC. According to the Disclosure Statement, 80% of the membership interests in ARC are held by directors and/or shareholders of ARC. Pursuant to the Plan, this loan is to be paid before Key or any of the other general unsecured creditors receive a dime. Thus, despite the fact that it is nominally a "DIP loan," the practical effect of this transaction is to permit the Debtor's insiders to make a contribution to the Debtor that will take priority over the claims of any of the Debtor's other creditors. It is, in other words, an equity infusion that is entitled to first priority rather than residual priority, as otherwise set forth in the Plan.

Through the Proposed Plan, the directors and shareholders that make up ARC are being granted a windfall under the Plan at the expense of creditors like Key. If the Debtor's insiders wished to make a capital contribution from the Debtor, then that was their prerogative, but they should not be allowed to recoup their contribution before any other creditor is paid. Key therefore requests that ARC's secured claim be re-categorized as the equity interest that it is and assigned the appropriate priority in Class 4.

3

However, even if the ARC claim is construed as a loan rather than a capital contribution, and accorded Class 1 priority, it should certainly not be valued at $3,000,000 under the Plan. Pursuant to this Court's August 27, 2010 Order, ARC's security interest in the Debtor's assets only extended to "amounts *advanced* under the DIP facility post-petition." (DE 86, at 3, 5 (emphasis added).) According to the Disclosure Statement, only $700,000, not $3,000,000, was advanced to the Debtor post-petition. Therefore, the amount of ARC's secured claim is $700,000, not $3,000,000.

Key expects that the Debtor will claim that the $3,000,000 figure is the total amount of ARC's claim by virtue of language in the Debtor's note payable to ARC requiring the Debtor to pay ARC "three times the Principal Sum" of the note (i.e., $1,000,000) on the note's maturity date. (Exhibit A to DE 70.) The Court, however, did not allow ARC to claim a security interest in the outstanding amount due on the maturity date of the note. Rather the Court allowed ARC a first priority security interest only as to "amounts advanced under the DIP facility post-petition." Whether or not the note required Debtor to pay more than the "amounts advanced" post-petition on the note's maturity date is irrelevant. Further, even if the Order approving the DIP facility were to be construed as the Debtor seemingly prefers, Key submits that allowing ARC a Class 1 secured claim over four times greater than the amount of value it gave to the estate would result in a gross distortion of the Court's Order approving the DIP facility and a manifest unfairness to the Debtor's general creditors. Accordingly, Key requests that the Court re-classify ARC's claim against the Debtor as a Class 4 claim, or in the alternative, that it limit ARC's Class 1 Claim to $700,000 and treat the remainder as a Class 3 general unsecured claim.[1]

---

[1] Key notes that under the projections set forth in the proposed plan the investor members of ARC would recover their original contributions. In essence, with the proposed DIP financing, those investors are attempting to double down on their original investment, while having Key and similarly situated creditors cover their bet.

### B. The Young Plaintiffs Should Not Receive a Class 3 Equity Claim.

Key also objects to the Debtor's inclusion of the claims of the Young Plaintiffs as general unsecured claims. As noted in the Disclosure Statement, the Young Plaintiffs filed claims alleging that they had been misled into investing in the Debtor. It necessarily follows from this that the settlement award to the Young Plaintiffs represented the compromise of a claim that the Young Plaintiffs were wrongfully induced to purchase shares in the Debtor. At the same time, however, the Debtor also agreed to permit them to retain their equity interests in the Debtor in any plan they proposed. (DE 160, at 6.) Thus, the Plan anomalously grants the Young Plaintiffs a Class 3 unsecured claim as a result of a claim that they were wrongfully misled into buying an interest in the Debtor, then simultaneously permits them to maintain that very same interest. Once again, the Debtor and its shareholders attempt to have it both ways. If the settlement payment to the Young Plaintiffs is indeed a payment made as a result of the Young Plaintiffs' investment in the Debtor, then it should be re-characterized as an equity claim and also classified as a Class 4 claim.

### CONCLUSION

For the foregoing reasons, Key respectfully requests that the Court sustain its Objection and reject the Debtor's Plan.

Respectfully submitted,

KEY ELECTRONICS, INC.
By Counsel

*/s/ Michael J. Ferrigno*
Michael J. Ferrigno, (VSB No. 68140)
7926 Jones Branch Drive
Suite 916
McLean, VA 22102
Telephone: (703) 506-9440
Facsimile: (703) 506-0929
Email: mferrigno@pkc-law.com
*Local Counsel for Key Electronics, Inc.*

Michael M. Hirn
101 South Fifth Street, Suite 2500
Louisville, Kentucky 40202
Telephone: (502) 540-2300
Facsimile: (502) 585-2207
Email: michael.hirn@dinslaw.com
*Lead Counsel (pending Pro Hoc Vice) for Key Electronics, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was served this the 1st day of March, 2011 upon the following parties by United States mail and by ECF electronic service upon all parties who have filed a request for service of papers.

Lawrence A. Katz
Frederick W. H. Carer
Venable LLP
8010 Towers Crescent Drive
Suite 300
Vienna, VA 22182

Stephen E. Leach
Leach Travell Britt, PC
8270 Greensboro Drive
Suite 1050
McLean, VA 22102

Frank J. Bove
Joseph A. Guzinski
Office of the United States Trustee
115 S. Union Street, Room 210
Alexandria, VA 22314

> */s/ Michael J. Ferrigno*
> *Michael J. Ferrigno*